**Vicki BENSON, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, et al., Defendants.**

**Case No. CV 05–1219 ODW (CTx).**

United States District Court, C.D. California, Western Division.

Jan. 9, 2009.

Glenn R. Kantor, Peter S. Sessions, Kantor and Kantor LLP, Northridge, CA, for Plaintiff.

Daniel W. Maguire, Edith S. Shea, Burke Williams and Sorensen, Robert F. Keehn, Robert F. Keehn Law Office, Los Angeles, CA, David Alan Brooks, Sanford P. Shatz, Stephen T. Hicklin, Countrywide Home Loans Inc., Calabasas, CA, for Defendants.

## ORDER GRANTING MOTION FOR ATTORNEYS' FEES, REDUCING HOURS

OTIS D. WRIGHT II, District Judge.

Before the Court is Plaintiff Vicki Benson's ("Plaintiff") motion for attorneys fees. Having reviewed the filings and applicable authority, the Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. Pro. 78; L.R. 7–15. The Court grants the motion to award attorneys' fees but reduces the time billed as shown below. Plaintiff's counsel is ordered to recalculate the rate under the reduced time and file the total due within 10 days from the date of this order.

## I. INTRODUCTORY BACKGROUND

### A. Factual Background

This action arises out of a claim for short-term total disability benefits submitted by Plaintiff Vicki Benson pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") under her employer's employee welfare benefit plan, the Countrywide Financial Corporation Group Disability Plan (the "Plan"). The short-term disability benefits portion of the Plan is insured and administered by Defendant Continental Casualty Company ("Continental").

The underlying facts are briefly summarized. Plaintiff, a 47 year old woman, began working for Countrywide in 1996. Beginning in December 2002, Plaintiff noticed numbness and burning in her right leg, for which she sought medical advice and treatment. By March 11, 2004, Plaintiff's condition forced her to cease working. One of her doctors completed a "Doctor's Certificate" for State of California disability insurance benefits. On June 7, 2004, Plaintiff filed for short-term disability benefits with Continental. Plaintiff stated she was disabled due to multiple sclerosis. Continental sought records from two of Plaintiff's doctors. During this process, Continental's group disability insurance policy was acquired by Hartford Life and Accident Insurance Company. On June 28, 2004, Hartford wrote to Plaintiff requesting additional information before making its disability benefit determination. It received records from one doctor. On July 8, 2004, Hartford wrote Plaintiff and explained that the records did not provide support for a claim that would prevent Plaintiff from performing the substantial and material duties of her occupation. Plaintiff sought an administrative appeal of this denial.

On July 30, 2004, Plaintiff began treatment with a fifth doctor who continued to certify Plaintiff's condition entitled her to state disability benefits. On December 15, 2004, Plaintiff's counsel submitted additional medical records for Hartford's review. Plaintiff also requested an opportunity to comment on any additional evidence Hartford might obtain in reviewing Plaintiff's appeal.

On January 12, 2005, Hartford commissioned an independent medical review of Plaintiff's records, by David Greco, M.D., a board certified neurologist. In addition to reviewing Plaintiff's medical records, Dr. Greco also spoke with *two of* Plaintiff's five treating physicians. Apparently, Dr. Greco made no attempt to speak with the other doctors, some of whom had less optimistic prognosis as to Plaintiff's ability to work.

Dr. Greco opined that Plaintiff had cervical myelopathy and probable multiple sclerosis and that Plaintiff would not be able to perform in occupations that required constant standing or walking, but had no restrictions that would impair her ability to perform a sedentary occupation.

On January 31, 2005, Hartford wrote to Plaintiff again denying her claim on appeal. With this denial, Hartford included a copy of Dr. Greco's report. There was no opportunity to review and respond to the report before the claim was denied. That decision exhausted Plaintiff's administrative appeals, and this action followed.

## B. Procedural History

Plaintiff filed her Complaint on February 17, 2005. The case was assigned to the Honorable George P. Schiavelli. On April 14, 2005, Defendant Continental Casualty Company and Countrywide Financial Corporation Group Disability Plan filed an answer. On April 19, 2008, the following Defendants also filed an answer: Countrywide Financial Corporation Medical Plan, Countrywide Financial Corporation Group Insurance Plan, Countrywide Financial Corporation DB Pension Plan and 401(k) Savings and Investment Plan.

Cross motions for summary judgment ("MSJ") were filed on February 21, 2006, which were ultimately heard on May 8, 2006 and taken under submission.

On May 30, 2006, Judge Schiavelli issued an order remanding the case to the Plan, making the following observations: "... [I]t is undisputed that Plaintiff was not afforded the opportunity to review and respond to Dr. Greco's report, and possible other evidence relied upon by the Plan in assessing the appeal. The plan provides

no explanation for its failure to permit full review of all relevant appeal documents. Accordingly, the Court remands this case to the Plan with instructions to reopen the administrative record and allow Plaintiff the opportunity to respond to Dr. Greco's report and any other evidence not previously disclosed." (May 30, 2006 Order, Docket No. 32.)

On January 25, 2008, almost two years later, Defendants filed a report with the Court. The report stated that Plaintiff failed to "comply with the Court's order by failing to submit a response to Dr. Greco's report."[1] (Jan. 25, 2008 Defs.' Report 2:21–25.) Defendants claimed they reviewed the new evidence that Plaintiff submitted and found that it did not warrant a change in the prior decision reached on Plaintiff's insurance claim because Plaintiff failed to submit a doctor's report refuting Dr. Greco's report.

The parties then stipulated to set a hearing date to rehear the cross motions for summary judgment. Judge Schiavelli requested supplemental briefing and following a number of continuances, the matter was heard and taken under submission on September 19, 2008. On September 25, 2008 Judge Schiavelli issued a Minute Order finding Defendants had abused its discretion in making its determination of plaintiff's entitlement to benefits under the Plan and Plaintiff was entitled to short-term disability benefits. The Minute Order concluded with: "Plaintiff may seek attorneys' fees." (Docket No. 54.)

After Judge Schiavelli left the bench in October, Plaintiff filed a motion for attorneys' fees on October 31, 2008. Thus, this case was reassigned to this Court. The Court set the hearing for this motion to January 12, 2009. Defendants filed their

1. Defendants claim that this failure to submit a response to Dr. Greco's report was dispositive. This is too narrow a reading of the Court's remand order in 2006. *See* discussion *infra*.

opposition on December 29, 2008. Plaintiff replied on January 5, 2009. As noted above, the Court finds this matter appropriate for decision without oral argument.

## II. DISCUSSION

As the analysis below shows, the Court grants the motion for an award of attorneys' fees but makes a minor reduction in the total time requested because the hours were either excessive or inapplicable.

### A. Legal Standard

 Under ERISA, a court has the discretion to allow reasonable attorneys' fees and costs of the action to either party. *See* 29 U.S.C. § 1132(g)(1); *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1171–72 (9th Cir.1999). The Ninth Circuit applies a five-factor test "to determine whether an ERISA fee award is appropriate." *McElwaine*, 176 F.3d at 1172 (citing *Hummell v. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980)). As established by the *Hummell* Court, the five factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all plan participants or resolve a significant legal question; and (5) the relative merits of the parties' positions. *Id.* Courts use the *Hummell* factors in a balancing approach to determine whether to award fees. *See id.* at 1173 (explaining that each factor does not have to weigh in in support of an award). Additionally, the Ninth Circuit recognizes a "special circumstances" rule in which "a successful ERISA participant 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* at 1172 (quoting *Smith v.*

*CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984)).

### B. Analysis

#### 1. The Hummell Factors

In her motion, Plaintiff does not specifically address each *Hummell* factor. Rather, she focuses on the "special circumstances" rule. In their opposition, Defendants claim that all the factors weigh in favor of denying a fee award. In reply, Plaintiff counters each *Hummell* factor.

 In review, the Court finds the *Hummell* factors weigh in favor of Plaintiff. Defendants are able to satisfy the award (i.e., factor No. 2) and their failure to address alternative information on remand, incorrectly claiming that the Court required Plaintiff to get a doctor's report directly refuting Dr. Greco's findings, coupled with Dr. Greco's partial interview of plaintiff's treating physicians shows a degree of culpability and/or weak merit (i.e., factors No. 1, 5). Moreover, awarding a fee in this circumstance may provide a deterrence to Defendants and other plan providers by assuring that they thoroughly review all documentation, especially when there is a structural conflict as there was here (factor No. 3). *See McAfee v. Metro. Life Ins. Co.*, No. CIV 05–00227 WBS KJM, 2008 WL 5214643, *15–*16, 2008 U.S. Dist. LEXIS 100765, *43 (E.D.Cal. Dec. 11, 2008) (explaining that awarding fees due to an incorrect decision by a plan administrator will have a deterrent effect on other administrators faced with similar decisions). While the factors are not overwhelmingly in favor of Plaintiff, the Court finds that awarding the fee is proper especially because Plaintiff was successful after several years of contesting Defendants' denial of her claim and Defendants have failed to show any special circumstances that would make this award unjust.

### 2. Reasonableness of Fees

Plaintiff seeks at least $54,275.00 in fees and costs.[2] Defendants argue that this sum is excessive. As shown below, the Court finds that the rate charged by the parties is reasonable but has some disagreement concerning the amount of the time billed. The Court therefore reduces the total hours charged by partner Glenn Kantor by 0.1 hour and the total hours billed by Peter Sessions, including the seven he anticipated for the reply, by 8.3 hours.

Under ERISA, fees are calculated using a hybrid lodestar/multiplier approach. *McElwaine*, 176 F.3d at 1173. "To calculate the 'lodestar' amount, we multiply the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate, raising or lowering the lodestar according to factors identified by this circuit." *Id.* The Ninth Circuit does not include enhancement multipliers or contingency fee arrangements in ERISA cases. *Id.* Nor are fees available for administrative portion of an ERISA appeal. *Id.* at 1172 n. 8.

#### a. Hourly Rates Charged

■ Plaintiff contends that the following rates per hour are reasonable: $500.00 for Glenn R. Kantor ("Kantor"), a partner; $400 for Peter S. Sessions ("Sessions"), an associate; and $150.00 for Toni Quigley, a paralegal.[3] As for the attorneys fees, Plaintiff submits not only a declaration by each lawyer about their experience and rates but also affidavits of other attorneys setting forth their customary rates, all of which support a finding that these rates are reasonable. *See, e.g., United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

Moreover, counsel has submitted several other orders by sister federal courts finding the $400 rate charged for associate attorneys reasonable. Additionally, at least one case found reasonable an hourly billing rate of $500, which the law firm Kantor & Kantor began charging for partner's work in 2008. Additionally, Defendants have failed to submit affidavits or other evidence to rebut the prevailing rate.

Because attorneys are entitled to compensation for the delay in receiving funds, the Court also finds that applying the current rate charged to all hours submitted since 2005 is reasonable. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir.2007) ("District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement.")

#### b. Time Reduction

Defendants contest specific time entries by both Kantor and Sessions. The Court finds some of Defendants' objections to have merit.

---

**2.** Plaintiff originally sought $51,475.00 in fees if this motion was not opposed and $54,275.00 if the motion was opposed. The increase is based on the anticipated seven hours that Peter Sessions expected to spend on preparing the reply brief and attending the hearing. (Oct. 31, 2008 Decl. Peter Sessions

¶ 10.) The reasonableness of this increase is addressed below. *See* discussion *infra.*

**3.** These are the rates currently charged at Kantor & Kantor. The partners charged $450 in 2007 and $400 between 2004 and 2007.

■ As for Kantor's time, the Court agrees that 0.1 time increment for a letter notifying client of change of address, billed on February 25, 2005, is not reasonable. It is secretarial work which could have and probably was accomplish by means of a mass mailing to all of the firm's clients. The court rejects, however, Defendants objection to 0.2 hr for his review of executed retainer and authorizations. Thus, the Court orders Kantor's hours reduced by 0.1.

As for Sessions' time, the Court rejects Defendants' request that his time be reduced for email correspondence he had with Kantor. These emails can been viewed as a conference to secure advice, plan, strategize and assure the work is not duplicative. Moreover, Kantor did not bill for these emails: Only Sessions did. Thus, the Court finds this time properly billable. The Court, however, finds some of Sessions' hours unreasonable for the following reasons.

■ First, the Court agrees that the 3.0 hours for attendance at a canceled scheduling conference on June 27, 2005, is unreasonable. Plaintiff's counsel argues that he should not be penalized for attending a conference, scheduled for June 27, 2005, that was canceled without prior notice. While the Court would like to agree, Plaintiff failed to specify what the total three hours was spent on during the "canceled" conference. While the Court would be willing to compensate for travel to and from the canceled conference, Sessions fails to request travel time for June 27, 2005 in either the motion or the reply, although he did so for other conferences.[4] Thus the Court agrees to the 3–hour reduction.

■ Second, the Court finds excessive the 3.4 hours Sessions billed for the July 14, 2005 scheduling conference. The July 14, 2005 scheduling conference lasted only 12 minutes. Granted, Sessions may have had to wait until their case was called in Judge Schiavelli's chambers. If so, it would take Judge Schiavelli *an hour at most* to complete his scheduling conferences on Monday. Thus, the Court finds an hour for attendance and an hour for travel time (to-and-from Sessions' Northridge office), which Sessions noted in his reply, is reasonable.[5] The Court, therefore, reduces the July 14, 2005 time billed by 1.4 hours,

■ Third, the Court finds excessive the time billed by Sessions for the post-remand hearing on September 19, 2008. Sessions billed 3.9 hours (3.5 for the hearing and 0.4 to call client). The hearing itself took approximately 20 minutes. Taking into consideration the travel time that Sessions noted (one hour as reasonable) and time taken to wait and/or prepare for the hearing, the Court finds 2 hours reasonable for this hearing. Thus, the Court reduces Sessions time by another 1.9 hours.

4. The Ninth Circuit will compensate for travel time to and from litigation hearings at an attorneys' rate if it is reasonable. *See Davis v. Mason County,* 927 F.2d 1473, 1487–88 (9th Cir.1991) (affirming the lower court's award of travel expenses because courts generally hold that expenses incurred during the course of litigation which are normally billed to fee-paying clients should be taxed); *see also Allen v. City of Los Angeles,* No. CV 91–2497 JGD (Tx), 1995 WL 433720, *10, 1995 U.S. Dist. LEXIS 13929, *27–*28, (C.D.Cal. Jan. 13, 1995) (allowing billing for travel time to attend meetings, trial, depositions, and travel between activities related to the case because it "necessary and reasonable").

5. Because Sessions does not specify the time for travel versus attendance, the Court adopts a reasonable time to travel between Northridge and downtown Los Angeles of 30 minutes one way.

■ Finally, Sessions lists a total of seven hours anticipated to prepare a reply brief and attend a hearing. Again, he does not specify the difference between drafting the brief, travel time and attending the hearing. Because the Court finds this matter appropriate for a decision without oral argument, no hearing is necessary. Thus, the Court will reduce the seven hours anticipated by Sessions by 2 hours, which appears to be an approximate time allotted for travel to and attending hearings.

In sum, Sessions time should be reduced by 8.3 hours or $3,320. Including the reduction in Kantor's time, the total reduction equals $3,370.00. All other objections are rejected.

### c. Paralegal's Time

■ Defendants argue that Quigley's paralegal time, a total of 18.5 hours, does not qualify for compensation because her work was dedicated to the administrative review after the case was remanded. *McElwaine*, 176 F.3d at 1172 n. 8. Plaintiff cites a Second Circuit decision as persuasive authority refuting this argument. *See Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 122 (2d Cir.2002) ("Where the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during pendency of the administrative proceedings, we hold that ERISA authorizes the award of associated costs.").

While the Ninth Circuit has not addressed this precise issue, the court finds the holding and rational of the Second Circuit persuasive. *Id.* at 122 (explaining that the text and legislative history of ERISA indicate that once a court of law has assumed jurisdiction, all costs incurred may be shifted by a court to one party, including administrative proceedings related to a court order); *see also McAfee*, 2008 WL 5214643, at *16–*18, 2008 U.S. Dist. LEXIS 100765, at *47–*50 (same); *but see Kniespeck v. Unum Life Ins. Co.*, No. CIV S–01–0878 WBS EFB, 2007 WL 496346, *7, 2007 U.S. Dist. LEXIS 98021, *19 (E.D.Cal. Feb. 12, 2007) ("The court therefore declines to award attorneys' fees for post-remand work related to the administrative review of plaintiff's claim.").

Again, while this issue has yet to be tackled by the Ninth Circuit, the Court finds that *Peterson* and *McAfee* more applicable to this case than *Kniespeck*. While the Court's first order remanding the action was procedural in essence, it ordered Defendants to give Plaintiff the opportunity to review and respond to the doctor's report that denied her disability claims. Defendants contend they have complied with the order but note that Plaintiff failed to file her own doctor's report specifically refuting Dr. Greco's finding. Thus, argue defendants, Plaintiff failed to provide support for her argument of an abuse of discretion in the adjudication of her claim and the subsequent appeal. Thus, while the review was administrative, the Court retained jurisdiction over the action. Accordingly, the Court finds that Plaintiff can be awarded fees for the paralegal work performed in connection with the administrative appeal.

## III. CONCLUSION

As noted above, the Court finds Plaintiff should be awarded attorneys' fees. The fees are reasonable, except for some hours charged by the attorneys on this matter. Thus, the Court reduces Kantor's hours by 0.1 and Sessions hours by 8.3 hours. Plaintiff's counsel shall recalculate the attorneys' fees consistent with this Order and file the total due within 10 days from the date of this order.

**IT IS SO ORDERED.**