NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 21 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVE NAGY, | No. 16-16160 |
| Plaintiff-Appellee, | D.C. No. 3:14-cv-00038-HSG |
| v. | |
| GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF ORACLE AMERICA, INC. and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | MEMORANDUM[*] |
| Defendants-Appellants. | |

| | |
|---|---|
| DAVE NAGY, | No. 17-15491 |
| Plaintiff-Appellee, | D.C. No. 4:14-cv-00038-HSG |
| v. | |
| GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF ORACLE AMERICA, INC. and HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | |
| Defendants-Appellants. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted May 14, 2018
San Francisco, California

Before:  THOMAS, Chief Judge, FRIEDLAND, Circuit Judge, and ZILLY,[**] District Judge.

Defendant-Appellants Group Long Term Disability Plan for Employees of Oracle America, Inc. and Hartford Life and Accident Insurance Company (collectively "Appellants") appeal the district court's decision to overturn a denial of so-called "own occupation" long-term disability benefits under an employee welfare plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as the ensuing award of attorney's fees to Plaintiff-Appellee Dave Nagy ("Nagy").  We affirm the award of "own occupation" benefits but vacate the award of attorney's fees.

1.　　Where, as here, the district court reviews de novo the denial of benefits, that review is limited to the administrative record unless "circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting *Quesinberry v.*

---

[**]  The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

*Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)). Several such circumstances were present here, including "complex medical questions," "issues regarding the credibility of medical experts," and the fact that the additional evidence at issue—a decision granting Nagy social security benefits—"could not have [been] presented in the administrative process." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Quesinberry*, 987 F.2d at 1027). Furthermore, we have recognized that social security decisions can be particularly important evidence in ERISA cases. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011). For these reasons, the district court did not abuse its discretion by considering the social security decision even though it was not part of the administrative record.

**2.**     The district court evaluated de novo whether Nagy qualified for "own occupation" benefits. That mixed question boiled down to whether Nagy's condition rendered him "unable to perform with reasonable continuity" work comparable to that he had been "regularly performing" beforehand. Because that is "about as factual sounding as any mixed question gets," we review for clear error.[1]  *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at*

---

[1]  Despite the paper-intensive focus of ERISA cases, it remains true that the district court "has both the closest and the deepest understanding of the record," *U.S. Bank*, 138 S. Ct. at 968. *Cf. United States v. Hinkson*, 585 F.3d 1247,

*Lakeridge, LLC*, 138 S. Ct. 960, 968 (2018). Although the facts here may be susceptible to more than one interpretation, we cannot say that the district court clearly erred in finding that Nagy's condition rendered him unable to perform work comparable to his prior job duties.[2] *See Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 502 (9th Cir. 1991) (noting that, for a finding to be clearly erroneous, it must "strike us as wrong with the force of a five-week old, unrefrigerated dead fish").

**3.** "[A]bsent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 590 (9th Cir. 1984). No such circumstances exist here, so the district court properly decided to award attorney's fees. Appellants argue that the district court nevertheless abused its discretion in awarding fees in the amount of $245,305.50.

First, Appellants maintain that the fee award should not have compensated work performed in connection with administrative proceedings ordered by the district court regarding so-called "any occupation" benefits that occurred after this

---

1258-59 (9th Cir. 2009) (en banc) (reviewing deferentially the district court's assessment of paper evidence proffered as part of a motion for a new trial).

[2] The district court also did not err by relying on the opinions of Nagy's treating physicians, especially given that "[t]here is no blood test or other objective laboratory test" for Nagy's condition. *Salomaa*, 642 F.3d at 677.

litigation about "own occupation" benefits was complete. Although Appellants made this same argument below, and although the district court never addressed it, Nagy responds only by mistakenly asserting that the district court "addressed every argument made by [Appellants]." Nagy has therefore forfeited any other argument he might have offered in defense to this portion of the fee award, which included compensation for work performed by his attorney as well as by a paralegal.[3] *See, e.g., Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009).

Second, Appellants argue that the district court abused its discretion in calculating the fee award using an hourly rate of $675/hour for Nagy's attorney, notwithstanding record evidence suggesting that this rate was in line with the market rate for similar services performed by attorneys with similar qualifications and experience. Appellants maintain, as they did in district court, that the rate should have been no higher than $500/hour given the skill of Nagy's attorney and the quality of representation he provided. Nagy again offers no meaningful response, so he has forfeited any argument that might have helped his cause here too. *See id.*

---

[3] Indeed, Nagy expressly waived any claim to these fees after oral argument. And in any event, the disputed work was performed in connection with administrative proceedings regarding "any occupation" benefits that occurred *prior to* a separate lawsuit about "any occupation" benefits. Such work would not be compensable under ERISA even if Nagy were to prevail in that lawsuit. *See Cann v. Carpenters' Pension Tr. Fund for N. Cal.*, 989 F.2d 313, 316 (9th Cir. 1993).

We vacate the award of attorney's fees and remand for recalculation of that award.  On remand, the district court should exclude all work performed in connection with administrative proceedings and calculate the fee award using an hourly rate of $500/hour for Nagy's attorney.  Each party shall bear their own costs on appeal.

**AFFIRMED in part, VACATED in part, and REMANDED.**

*Dave Nagy v. Group Long Term Disability, et al.*, 16-16160, 17-15491

FRIEDLAND, J., concurring:

I concur in our decision to affirm the award of "own occupation" benefits and to vacate the award of attorney's fees. I write separately to emphasize that, in determining a reasonable hourly rate, district courts must take into account "the experience, skill, and reputation of the attorney requesting fees." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986)). This means that the "[q]uality of representation" is a key factor in determining a reasonable hourly rate. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000). District courts must of course be guided by the prevailing rate charged in the community for similar work performed by comparable attorneys, rather than "the rates actually charged the prevailing party." *Welch* , 480 F.3d at 946. But that is no license to overlook the skill of the particular attorney requesting fees and the quality of representation he or she has provided.

The magistrate judge's report and recommendation was thorough in many respects, but it neglected this crucial inquiry—even though Appellants argued, and our precedents instructed, that it was required. The district court did not correct

1

the oversight. This matters because the services of Nagy's attorney do not appear to have been worth anything close to the $675/hour he was awarded.[1]

The trial briefs that Nagy's attorney prepared in district court misstated or omitted key arguments. For example, the only argument in the opening trial brief regarding the crucial opinions of Dr. Early was that those opinions did "not add anything except for a continuation of [Nagy's] symptoms." That is just wrong. And nowhere did Nagy's attorney point out that at least two medical professionals hired by Appellants conducted less-than-careful reviews of Nagy's medical records. Specifically, Dr. Welbel missed Dr. Montoya's documenting of five-plus symptoms of chronic fatigue syndrome, and Dr. Sullivan overlooked Nagy's prior diagnoses of depression. To earn $675/hour, an attorney should be expected to find favorable facts like these, especially over the course of 300-plus hours of work.

The performance of Nagy's attorney in this court was similarly unimpressive. What follows, for example, is his entire defense of the fee award of nearly a quarter-million dollars in the argument section of the answering brief he prepared for this appeal:

> [The magistrate judge] carefully reviewed the *Hummell* factors, and as we set out in the statement of the case concerning the fee award, she addressed

---

[1] I note that the presumptive ten-percent cap on imposing a "haircut" on the *number of hours* claimed, *see Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), was no bar to significantly reducing the *hourly rate* requested.

> every argument made by [Appellants]. Because [Appellants] have not explained why any part of [the] Report and Recommendation is wrongly decided, there is no basis to set aside the fee award.

That's it. And as our disposition describes, neither of those sentences is accurate. Furthermore, the portion of "the statement of the case concerning the fee award" referenced above—which Nagy's attorney appears to have produced by copying and pasting extended excerpts of the magistrate judge's report and recommendation—fails to explain in any meaningful way why the report and recommendation's reasoning was correct.

Determining a reasonable hourly rate is "inherently difficult." *Chalmers*, 796 F.2d at 1210 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). But that difficulty does not excuse district courts from evaluating the quality of representation, particularly when there has been a challenge to whether the level of quality justifies the requested hourly rate.

3